126  131
 75a  67

126  131
 77a 517

## TURNER v. BUTLER *et al., Appellants.*

### Division One, December 22, 1894.

1. **Practice**: NEW MATTER IN ANSWER: REPLY: WAIVER.  Where a cause has been tried on the theory that the new matter set up in the answer has been denied, the plaintiff will not be heard to say that such new matter stands admitted because no reply was filed.

2. ———: ———: ———.  A reply in such case may be filed *nunc pro tunc.*

3. ———: ———: ———: REFEREE.  The foregoing rules apply to trials of issues of fact before referees.

4. **Contract**: ACCOUNTING: TRUST PROPERTY.  Where plaintiff made an absolute conveyance of land to defendant to secure him for money advanced, defendant agreeing to use the timber thereon and to allow for it at a certain rate, the amount thereof to be applied on the payment of the money so advanced by defendant, it is no defense in an action for an accounting and a reconveyance that plaintiff's interest in the land was sold under an execution against him and that defendant acquired it from a purchaser.

5. ———: ———: ———.  A trustee can not defeat the trust by purchasing the trust property under a paramount title.

6. ———: PLEADING: IMMATERIAL VARIANCE.  Defendant contracted with plaintiff to cut certain ties and pay him an agreed price therefor and entered upon the performance of such contract.  Subsequently a second contract was made modifying the first one.  In an action on the two contracts plaintiff declared on them as one, under the date of the second contract.  The written contract read in evidence at the trial and the admissions made in the pleading, taken together, constituted an agreement substantially the same as that pleaded.  *Held,* that the mistake in the petition as to the date of the contract was immaterial and that plaintiff was entitled to recover for the ties cut under both contracts.

*Appeal from Miller Circuit Court.*—JOHN M. WILLIAMS, *Esq.,* Special Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*John W. Booth* with *W. S. Pope* for appellants.

(1)   In Missouri a referee has no power to permit an amendment of a pleading.   (2) Courts should not allow a neglect to file a replication at the proper time to be remedied in such a manner as to deprive the opposite party of a fair trial of the facts to be put in issue by such replication.   (3) A mortgagor's equity of redemption is subject to sale on execution, and a purchaser holding under sheriff's deed conveying the interest of the mortgagor is substituted to all his rights, and may maintain a bill for an accounting and to redeem.   *Matson v. Capelle*, 62 Mo. 235; *O'Neil v. Capelle*, 62 Mo. 202.   (4) An assignee, whether he be assignee or the mortgagor of the equity of redemption, stands in the place of his assignor in respect to the account, both as to the time before and the time after the assignment.   2 Jones on Mortgages [4 Ed.], p. 71, sec. 1119.   (5) A transfer of the equity of redemption while the mortgagee is in possession necessarily carries with it to the purchaser the right to an account for rents and profits received by the mortgagee before, as well as after, such transfer, as an incident to the right of redemption.   Jones on Mortgages, *supra.* (6) A conveyance of the equity of redemption disposes of all right of the original mortgagor to the premises, and to an account for rents and profits. · And after such conveyance, whatever settlement the mortgagee may make with his assignee does not concern him.   (7) In taking an account between mortgagor and mortgagee, tho mortgagee, in the absence of willful default or gross negligence, will not be held accountable for anything more than the actual rents and profits received.   Jones on Mortgages, *supra*, sec. 1123; *Turner v. Johnson*, 95 Mo. 431.   (8) A distinction exists between a mortgagee, in possession under a deed on its face a mortgage, and

one in possession under a deed in form absolute, and in fact only a mortgage by the application of equitable rules to an oral agreement. In such case the mortgagee, is chargeable only with what he has received, not what he might have received. Jones on Mortgages, *supra*, sec. 1123. (9) Mortgagee in possession may, without special contract, cut timber and clear land. He is entitled to make the most of the property for the purpose of realizing what is due him. He has only to account for the proceeds of the property. Jones on Mortgages, *supra*, sec. 1124. (10) A mortgagee, though in possession, is not a trustee for the mortgagor within the rule forbidding trustee to purchase the estate with which he has been entrusted. He may acquire the equity of redemption, either directly from the owner or by purchase at sale on execution. 1 Jones on Mortgages [4 Ed.], sec. 711; 1 Boone on Mortgages, sec. 114; 1 Pingrey on Mortgages, pp. 907, 908, sec. 899; *Woodlee v. Burch*, 43 Mo. 234; *Wilson v. Vanstone*, 112 Mo. 315; 1 Sugden on Vendors [8 Am. Ed.], top p. 99. (11) In equity cases, where the evidence is preserved, the supreme court is not concluded by any finding in the trial court; but, where the evidence warrants, it will review such finding and reverse the case, with directions to the lower court to enter a proper judgment. (12) A bill to redeem a mortgage and for an accounting does not open for inquiry all demands and dealings between the parties. (13) On a bill to redeem, costs should be adjudged against mortgagor. *Turner v. Johnson*, 95 Mo. 431.

*J. R. Hansbrough* and *D. H. McIntyre* with *Thoroughman, Carter & Thoroughman* for respondents.

(1) After a trial and verdict, as though a replication was in, it is too late to raise the objection that

such pleading had been omitted. *Smith v. St. Joseph*, 45 Mo. 450; *Howell v. Reynolds County*, 51 Mo. 156. In such a case a general denial may be filed *nunc pro tunc* in aid of the verdict. *Foley v. Alkire*, 52 Mo. 319. (2) Rees was simply a trustee for Turner, and his purchase from Joy inured to the benefit of his *cestui que trust*. *Edwards v. Gottschalk*, 25 Mo. App. 552; *Baker v. Railroad*, 86 Mo. 78; 2 Perry on Trusts [4 Ed.], sec. 602v: *McAllen v. Woodcock*, 60 Mo. 174; *Lass v. Sternberg*, 50 Mo. 124. And it matters not if Rees' grantor was a purchaser at a judicial sale. *Roberts v. Moseley*, 64 Mo. 511. Where one receives a deed absolute in form, but intended as security only, and with a promise to reconvey upon payment, he becomes a trustee for the grantor to the extent of the grantor's interest therein. *Jasper v. Hazen*, 44 N. W. Rep. (N. Dak.), 1018. (3) It is in the discretion of the court to award costs. R. S. 1889, sec. 2932. This discretion will not be disturbed, unless there has been a clear abuse of it. *Turner v. Johnson*, 95 Mo. 453.

BLACK, P. J.—The plaintiff Turner commenced this suit against Morris D. Rees. The latter died while the cause was pending in the circuit court, and it was revived in the name of his devisee and the administrator *de bonis non* of his estate, with the will annexed.

It is alleged in the amended petition that plaintiff conveyed one thousand acres of land to Rees, by a deed absolute in form, dated the sixth of June, 1882; that the deed was in fact made to secure $2,500 advanced by Rees for the use and benefit of Turner; that Rees at the same time agreed to use the tie timber on the one thousand acres and on seven hundred acres and on still another eighty acres and allow Turner therefor the sum of five cents per tie, the amount going to Turner for the tie timber to be applied in payments of

the money so advanced. It is also alleged that Rees cut two hundred thousand ties on the land and that he has received rents for the cleared portion.

The answer admits that Turner conveyed the one thousand acres to Rees by deed absolute in form, though intended as a security as alleged. It admits the alleged agreement as to ties to be taken from the one thousand acres, but denies that the agreement covered ties to be taken from the other tracts, and denies that Rees received more than twenty thousand ties from and after the sixth of June, 1882. New matter is alleged which will be noticed hereafter.

The suit, it will be seen, is one for an accounting and to divest the devisee of Rees of the title to the one thousand acres. The issues of fact were heard by a referee who found there was due to the plaintiff, after deducting all advances and payments made by Rees, the sum of $3,685.85. The defendants appealed from a judgment entered on the referee's report.

1. The first question in the case arises out of the following facts: The cause was sent to the referee after an amended petition and an answer thereto had been filed and before the plaintiff filed a reply. When the cause came on for hearing before the referee, the plaintiff offered to file a reply, thereby putting in issue the new matter set up in the answer, but the defendants objected. As to this offer, the referee says in his report: "I permitted the replication to be presented and herewith return it with the papers, and have heard the case as if it had been properly filed." After the referee's report and exceptions thereto had been filed, the court allowed the reply to be filed *nunc pro tunc*, and of this ruling, and also that of the referee, the defendants complain, insisting that the new matter set up in the answer stands admitted.

The pleadings ought to have been made up before

the cause was sent to the referee, but it is evident the failure to file the reply was a mere oversight on the part of the plaintiff.    The cause was heard by the referee as if a reply had been filed, and this we are able to say from an inspection of the record, regardless of what the referee says on that subject; for it appears defendants produced much evidence to prove the new matter set up in their answer.    Where a case has been tried by the court, or by the court and a jury, as if the new matter set up in the answer had been denied, the plaintiff will not be heard to say the new matter stands admitted because no reply was filed.    *Smith v. The City of St. Joseph*, 45 Mo. 450; *Howell v. Reynolds County*, 51 Mo. 156; and in such a case the reply may be filed *nunc pro tunc*.    *Foley v. Alkire*, 52 Mo. *loc. cit.* 319.    The same rules apply with equal force where the issues of fact have been tried by a referee.

It is true the defendants in this case made the point before the referee that no reply had been filed, but they thereafter went on and put in their evidence the same as if a reply had been filed, and this being so, the court did not err in allowing the reply to be filed *nunc pro tunc*.

2.    The next question is whether certain facts set up in the answer constitute any defense.    The new matter presenting this issue of law is to the following effect:    That the plaintiff has no right of redemption, because his interest in the land was sold to one Joy at a sale under an execution issued on a judgment rendered in 1885, in favor of Joy and against Turner; and in this connection it also alleged that Rees purchased the interest thus acquired by Joy and paid therefor the sum of $250, the deed having been made in 1885.

In support of this defense we are cited to authorities which hold that a mortgagee does not stand in the position of a trustee, and that he may purchase the

mortgagor's equity of redemption at a sale under a prior and paramount title; but the principle is not applicable to a case like this. Here, Rees held the absolute title, not simply as security, but for all the purposes specified in the agreement, and this agreement bound him to do certain things for the benefit of the grantor. In short, he held the property in trust as a security for himself and as trustee for Turner. The rule is a familiar one that a trustee can not, without the consent of the beneficiary, deal with the trust property for his personal gain. He can not defeat the trust by purchasing the trust property under a paramount title. *Edwards v. Gottschalk*, 25 Mo. App. 549; *Baker v. Railroad*, 86 Mo. 75. The most that Rees or his devisee or administrator can claim by the purchase from Joy is to be reimbursed for the money paid for the outstanding title. This new matter set up in the answer constitutes no defense, nor does it affect the plaintiff's right to an accounting.

3. This brings us to the various objections made to the referee's statement of the account. To an understanding of these objections it may be stated here that the seven hundred acres and the one thousand acres are situated on the Osage river, in what is called "Brouse bend." The eighty acres mentioned in the pleadings and another eighty mentioned in the evidence are located some three miles below, at the mouth of Sugar creek. On the sixteenth of December, 1879, the plaintiff Turner purchased of Brouse the timber on all of said lands. Subsequently, and on the tenth of December, 1881, he purchased the one thousand acre tract. He owed, as a deferred payment on this purchase, the sum of $2,500. On December 23, 1881, he and Rees entered into a written contract by which Rees agreed to use the tie timber on all of the before mentioned lands and pay Turner five cents per tie, payments to be made monthly

as the ties were placed on the river bank, Rees to have
immediate possession of the land.    This agreement
shows that Rees paid Turner at that date $1,000, but
the contract provides that this $1,000, then paid, shall
stand as the last payment to be made by Rees for the
ties.    The contract limits the time for cutting and re-
moving the ties to October, 1883.

The petition, it will be seen from what has been
said, counts upon an agreement of date June 6, 1882,
and makes no mention of the prior contract of Decem-
ber 23, 1881.  On this state of the pleadings, the defend-
ant administrator insists that Rees should not be
charged with any ties cut on the land prior to June 6,
1882.    He also insists that the accounting should be
confined to ties taken from the thousand acres, because
the contract of the last named date was not put in evi-
dence, and the answer admits the alleged agreement
only in so far as it relates to the thousand acres.

It is evident the petition was prepared without
an accurate knowledge of the facts of the case, still we
think the referee did not err in stating the account so
as to include all the ties taken by Rees from all of the
lands.    The reliable evidence shows that Rees com-
menced cutting ties in February, 1882, and prosecuted
the work with vigor from that date to and after the
sixth of June, 1882.    The parties themselves seem to
have made no distinction between ties cut before and
after that date.    Looking to the course of business
between the parties, it is evident the agreement of the
sixth of June, 1882, was but a modification of the prior
one.    Instead of paying for the ties monthly, Rees
agreed to, and did, pay the $2,500 debt owing by Tur-
ner.    Besides all this, the defendant claims in his
answer, and claimed on the trial, a credit for the $1,000
paid under the first contract.    If entitled to that credit,
as we think he is, he ought to account for the ties

received under the same contract. Indeed, the written agreement put in evidence and the admissions made in the pleading, taken together, constitute an agreement the same in all substantial respects as that set up in the petition. The mistake as to the date is immaterial. The objections before stated are not well taken.

The evidence as to the number of ties taken from the land is very general and unsatisfactory. It does not show by any count made in the woods, or on the banks of the river, how many were cut. The referee was obliged to state the account on the basis of ties shipped by rafts and boats from Brouse bend and Sugar creek; and the evidence of the ties thus shipped consists wholly of the recollection of witnesses who speak of matters which occurred eight or ten years before the date of the trial. The referee charged Rees with one hundred and thirteen thousand, eight hundred and fifty-one ties. Entering into this estimate is an item of twenty-five thousand spoken of by the witness Northup. This witness says he received for Rees at Osage City, forty miles below Brouse bend, from twenty-five thousand to thirty thousand ties "in 1881 and 1882, more in 1881 than in 1882." He says he received them from Elisha Dawson and another person whose name he does not state, and that the ties came down by raft.

The referee having stated the account by charging Rees with ties taken from Brouse bend and Sugar creek, ought not to have included the same ties when landed at Osage City. To state the account in that way was to charge Rees twice with the same ties. But, aside from this, it is very clear these ties mentioned by Northup had nothing to do with the contract between Rees and Turner, for Northup says he received them at Osage City for Rees in 1881 and 1882, more in 1881 than in 1882. Now the evidence shows beyond all doubt

that Rees did not commence cutting ties under his contract with Turner until February, 1882. Again, it appears Jenkins, Fisher and Dawson cut a large number of ties on these lands in the year 1881. Some of the ties may have been cut in the very early part of 1882, but not thereafter. These persons acquired the right to cut the ties from Turner, and not from Rees. They no doubt sold the ties so cut by them to Rees, but the ties thus cut and sold by them had nothing to do with the Turner-Rees contract. Indeed it is quite clear these ties were cut before Rees took possession of the land. Turner, it is to be remembered, cut and caused to be cut many ties and logs from the lands before he entered into the contract with Rees. It is therefore perfectly clear that the item of twenty-five thousand ties mentioned in the referee's report should be excluded, leaving the Rees estate charged with eighty-eight thousand, eight hundred and fifty-one ties, and no more.

Many of the witnesses give their opinions as to the amount of tie timber on the lands when Rees took possession under his contract with Turner. These opinions are, at best, no more than random estimates, and they are entitled to but little consideration. But, taking them all in all, they show no more than this, that the entire one thousand, eight hundred and sixty acres would average forty or forty-five ties per acre; and this estimate falls short of that made by the referee, after deducting the twenty-five thousand. From a careful examination of the evidence as set out in the transcript, we have grave doubts whether Rees cut as many as eighty-eight thousand, eight hundred and fifty-one ties from all of the lands, but we do not feel justified in further reducing the referee's estimate as to the number of ties cut.

As to the $300 charged by the referee to the Rees

estate, the evidence is to this effect: Turner cut a large number of saw-logs prior to the date of his contract with Rees. Some of these logs were still on the lands when Rees took possession, and it is shown his tie choppers worked a number up into ties. As the evidence stands, we can not say that the referee erred in making this charge.

Turning now to the other side of the account, we find the referee gave the Rees estate credit for interest on the $1,000 paid by Rees on December 23, 1881, the date of the original contract; but did not give the estate credit for the $1,000. This was manifestly a mere omission in stating the account, and the omission must be corrected here.

It follows, from what has been said, that Rees should be charged with eighty-eight thousand, eight hundred and fifty-one ties at five cents per tie, and with the $300, making $4,742.55. From this should be deducted the $1,000, the $2,500, and also $250 paid by Rees to the First National Bank of Jefferson City, leaving due to the plaintiff on the sixth day of June, 1882, the sum of $992.55. We have made a rest in the accounts at that date, because the $2,500 were paid by Rees at that time. Again, the evidence does not show the amount of the monthly installments due for ties cut, but it does appear that the greater part of them were cut at and prior to June 6, 1882. We may, therefore, with fairness treat the whole amount due for ties cut as due at that date. We have not allowed the Rees estate interest on the $1,000, because, according to the agreement of December 23, 1881, that payment was to be deemed the last one to be made for ties to be cut, and there is no stipulation for interest in the *interim*. We have not allowed interest on the $2,500 paid by Rees for Turner, because the evidence does not show what, if any, interest was paid by Rees.

Turner v. Butler.

Following the referee's further findings, except as to taxes and interest, the Rees estate is charged as follows:

| | | |
|---|---:|---:|
| Balance due the plaintiff on June 6, 1882 | $ 992 | 55 |
| Interest on same to August 14, 1889 | 428 | 00 |
| Rents collected during six years | 416 | 00 |
| | $1,836 | 55 |

DEDUCT.

| | | |
|---|---:|---:|
| Taxes paid for years 1882 to 1887 both inclusive | $ 220 | 44 |
| Check of April 10, 1884 | 118 | 25 |
| Interest to August 14, 1889 | 37 | 32 |
| Paid Herman Bank on August 14, 1889 | 800 | 00 |
| | $1,176 | 01 |

Balance due the plaintiff on August 14, 1889 ...............$ 660 54

To this amount interest must be added from the last named date to the date of the judgment to be entered in this court, at the rate of six per cent. per annum. As the rents were collected and taxes paid annually, in small sums, we have not calculated interest on these amounts on either side.

The judgment of the circuit court is, therefore, affirmed in so far as it divests defendant Carrie E. Butler of the title to the land and invests the same in the plaintiff, and in so far as it relates to costs in the circuit court; but it is reversed in all other respects, and a judgment will be entered here for the plaintiff and against the administrator *de bonis non* for $660.54 with interest added as before indicated. The defendants will have judgment for the costs of this appeal. All concur.